B104 (FORM 104) (08/07)

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Gary M. Weiner, Chapter 7 Trustee | **DEFENDANTS**<br>People's United Bank, N.A. |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Weiner Law Firm, P.C.<br>1441 Main Street Suite 610 Springfield, MA 01103<br>413-732-6840 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor ☐ Other ☒ Trustee | **PARTY** (Check One Box Only) ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor ☒ Other ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED) Pursuant to 11 U.S.C. Sections 544, 549 and 551 of the U.S. Bankruptcy Code and Bankruptcy Rule 7001 , the Plaintiff seeks to avoid the mortgage of Peoples United Bank, N.A. and then to preserve same for the benefit of the bankruptcy estate.

**NATURE OF SUIT** (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property** ☐ 11-Recovery of money/property - §542 turnover of property ☐ 12-Recovery of money/property - §547 preference ☐ 13-Recovery of money/property - §548 fraudulent transfer ☒ 14-Recovery of money/property - other **FRBP 7001(2) – Validity, Priority or Extent of Lien** ☐ 21-Validity, priority or extent of lien or other interest in property **FRBP 7001(3) – Approval of Sale of Property** ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) **FRBP 7001(4) – Objection/Revocation of Discharge** ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation** ☐ 51-Revocation of confirmation **FRBP 7001(6) – Dischargeability** ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny **(continued next column) FRBP 7001(6) – Dischargeability (continued)** ☐ 61-Dischargeability - §523(a)(5), domestic support ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury ☐ 63-Dischargeability - §523(a)(8), student loan ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation   (other than domestic support) ☐ 65-Dischargeability - other **FRBP 7001(7) – Injunctive Relief** ☐ 71-Injunctive relief – imposition of stay ☐ 72-Injunctive relief – other **FRBP 7001(8) Subordination of Claim or Interest** ☐ 81-Subordination of claim or interest **FRBP 7001(9) Declaratory Judgment** ☐ 91-Declaratory judgment **FRBP 7001(10) Determination of Removed Action** ☐ 01-Determination of removed claim or cause **Other** ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.* ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

**B104 (FORM 104) (08/07), Page 2**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Robert P. Demusis, Jr. and Maria Katina Demusis | BANKRUPTCY CASE NO.<br>16-30184 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Massachusetts | DIVISION OFFICE<br>Western | NAME OF JUDGE<br>Melvin S. Hoffman |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>December 23, 2016 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Gary M. Weiner, Chapter 7 Trustee | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
| ROBERT P. DEMUSIS, JR. | ) | |
| MARIA KATINA DEMUSIS | ) | Case No. 16-30184 |
| Debtors | ) | |
|  | ) | |
|  | ) | |
|  | ) | |
| GARY M. WEINER, CHAPTER 7 TRUSTEE | ) | |
| of the Estate of Robert and Maria Demusis, | ) | Adv. Pro. No. 16- |
| Plaintiff | ) | |
| v | ) | |
| PEOPLES UNITED BANK, N.A. | ) | |
| Defendant | ) | |

## COMPLAINT TO AVOID MORTGAGE

## INTRODUCTORY STATEMENT

This is an action commenced by GARY M. WEINER, ESQ., the duly-appointed Chapter 7 Trustee, pursuant to 11 U.S.C. § 544, § 549 and §551 of the United States Bankruptcy Code and Bankruptcy Rule 7001, seeking to avoid the mortgage of Peoples United Bank, N.A. ( hereinafter "Peoples") and to then preserve same for the benefit of the bankruptcy estate.

## JURISDICTION

1.   The Court has jurisdiction over this matter, pursuant to the provisions of 28 U.S.C. § 157 and § 1334(a).  This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(k) and is brought pursuant to Bankruptcy Rule 7001(1).

2.   Venue is appropriate in this Court, pursuant to the provisions of 28 U.S.C. § 1409.  This matter arises under 11 U.S.C. § 544, §549 and § 551.

## PARTIES

3.     The Plaintiff, GARY M. WEINER, ESQ., ("Plaintiff") is the duly appointed, qualified and acting Trustee in the above captioned case.  The Trustee has a business address of 1441 Main Street, Suite 610, Springfield, MA 01103.

4.     The Defendant, Peoples United Bank, N.A. is a bank organized and existing under laws of the United States of America, and has a principal place of business at 850 Main Street, Bridgeport, CT 06604 ("Peoples").

## FACTUAL ALLEGATIONS

5.     On March 14, 2016, the Debtors, Robert and Maria Demusis, (hereinafter "Debtors") filed a Voluntary Petition for relief under Chapter 7 of the United States Bankruptcy Code.

6.     On April 22, 2016, the Plaintiff, GARY M. WEINER, ESQ., was appointed Chapter 7 Trustee and he continues to serve in that capacity.

7.     On January 29, 2008, the Debtor Robert P. Demusis, Jr.  ("Debtor") purchased the real property known as 33 Colorado Street, Springfield, MA for $165,000.00.  A copy of the Original Deed is affixed hereto as Exhibit "A".

8.     On January 31, 2008, the Debtor granted a first mortgage to Bank of America that encumbered the property at 33 Colorado Street, Springfield, MA.  This mortgage can be found in the Hampden County Registry of Deeds at Book 17134, Page 571.

9.      On or around October 31, 2008, the Debtor took out a Home Equity Line of Credit (the "HELOC") with the principal balance of $10,000.00 from the Bank of Western Massachusetts (now Peoples United Bank, N.A.).

10.     On the same date, the Debtor granted a mortgage (the "Mortgage") to the Bank of Western Massachusetts in relation to the HELOC.  A copy of that Mortgage is attached as Exhibit "B."

11.     The mortgage to the Bank of Western Massachusetts was never recorded in the Hampden County Registry of Deeds.

12.     Upon information and belief, Bank of Western Massachusetts was acquired by Peoples United Bank, N.A. and Peoples is now the holder of the HELOC and Mortgage.

13.     Upon information and belief, the present balance of the HELOC is approximately $10,161.84 based upon documentation provided by the Debtor.

14.     Absent the bankruptcy proceeding, Peoples would have the ability to correct its mortgage under general equitable principles granting relief against mistake.


## COUNT I


15.     The Plaintiff hereby restates and re-alleges each of the allegations of Paragraphs 1-13 above as if more specifically set forth herein.

16.     Pursuant to 11 U.S.C. § 544 (a) the Plaintiff has the rights and powers of a judicial lien creditor or judgment creditor with an execution return unsatisfied.

17.     Pursuant to 11 U.S.C. § 544 (a) the Trustee has the ability to avoid a transfer of interest in real property of the Debtor to an extent that a bona fide purchaser of the property may avoid the transfer.  Since People's mortgage was not recorded and perfected, the Trustee may avoid the Mortgage.

18.     Pursuant to 11 U.S.C. § 551 (a) after avoiding Peoples' Mortgage, the Trustee may preserve the lien for the benefit of the bankruptcy estate.

**WHEREFORE**, the Plaintiff, Gary M. Weiner, Esq., CHAPTER 7 TRUSTEE, respectfully requests:

a.  That the Court avoid the lien of Peoples United Bank, N.A. and preserve said Mortgage to the benefit of the estate;

b.  That the Court allow the Trustee to record the avoided lien for the benefit of the estate; and;

c.  For other such relief as this Court deems just and proper.

GARY M. WEINER, Chapter 7 Trustee Estate of
Robert and Maria Demusis, By his Counsel

/s/ Gary M. Weiner
Gary M. Weiner, Esq., BBO # 548341
Robert E. Girvan III, Esq. BBO#569063
WEINER LAW FIRM, P.C.
1441 Main Street, Suite 610
Springfield, MA 01103
Tel. No. (413) 732-6840
Fax No. (413) 785-5666
Date:   December 23, 2016



Bk 17134 Pg569  #6184
01-31-2008 @ 02:10p

MASSACHUSETTS STATE EXCISE TAX
HAMPDEN COUNTY REGISTRY OF DEEDS
Date: 01-31-2008 @ 02:10pm
Ctl#: 739      Doc#: 6184
Fee: $752.40  Cons: $165,000.00

**FIDUCIARY DEED**

**KNOW ALL MEN BY THESE PRESENTS THAT I, KAREN L. TOWNSEND, EXECUTRIX** under the Will of **MARILYN W. TOWNSEND (See Hampden County Probate Court Docket No.06P 1130-EP1), pursuant to Power of Sale and every other power conferred by the Will;**

for consideration paid and in full consideration of **ONE HUNDRED SIXTY FIVE THOUSAND and 00/100 ($165,000.00) DOLLARS**

**GRANT to ROBERT P. DEMUSIS JR. of 49 Spencer Street, Springfield, Massachusetts 01106,**

Certain real estate situated in East Longmeadow, and partly in Springfield, Hampden County, Massachusetts, being known and designated as Lot #37 (thirty-seven) as shown on a plan of lots recorded in Hampden County Registry of Deeds in Book of Plans 49, Page 30, said lot being more particularly bounded and described as follows:

NORTHERLY by Colorado Street, as shown on said plan, one hundred forty-five(145) feet; EASTERLY by land now or formerly of one McCarthy as shown on said plan, one hundred twenty-four and 03/100 (124.03)feet; SOUTHERLY by land of owner unknown as shown on said plan, one hundred forty-five and 10/100(145.10)feet; and WESTERLY by lot #38 (thirty-eight) as shown on said plan, one hundred thirty and 56/100 (130.56)feet.

Together with the right to use the ways as laid out on said plan in common with others for all purposes for which public streets are commonly used.

Subject to restrictions set forth in a deed from Bradford Collins et al Richard H. Ackerman at ux dated December 31, 1954 and recorded in said Registry of Deeds in Book 2360, Page 172.

Subject to easement rights granted Western Massachusetts Electric Company and New England Telephone and Telegraph Company by instrument dated November 12, 1954 and recorded in said Registry of Deeds in 2352, Page 270.

RE: 33 Colorado Street, Springfield, Hampden County, Massachusetts

Witness my hand and seal this 29th day of January, 2008.



**KAREN L. TOWNSEND, EXECUTRIX Under
the Will of MARILYN W. TOWNSEND**

### COMMONWEALTH OF MASSACHUSETTS

Hampden, ss.

Then personally appeared **KAREN L. TOWNSEND, Executrix** on this  29th  day of January, 2008,  before me, the undersigned Notary Public, who proved to me through satisfactory evidence of identification in the form of a driver's license or is personally known to me, to be the person whose name is signed on this document and acknowledged to me to be her free act and deed for its stated purpose.

_____
Notary Public

STEPHEN R. MANNING
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires May 12, 2011

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS

**EXHIBIT**

B

# MORTGAGE

**RECORDATION REQUESTED BY:**
THE BANK OF WESTERN MASSACHUSETTS, State Street Branch, 29 State Street, Springfield, MA 01101

**WHEN RECORDED MAIL TO:**
The Bank of Western Massachusetts, Loan Library, Two Burlington Square, Burlington, VT 05401

---

**FOR RECORDER'S USE ONLY**

**MAXIMUM LIEN.** The maximum amount of the line of credit which may be secured at any one time is $10,000.00.

**THIS MORTGAGE** dated October 31, 2008, is made and executed between Robert P. Demusis Jr, whose address is 33 Colorado St, Springfield, MA 01118 (referred to below as "Grantor") and **THE BANK OF WESTERN MASSACHUSETTS**, whose address is 29 State Street, Springfield, MA 01101 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor grants to Lender with MORTGAGE COVENANTS all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Hampden County, Commonwealth of Massachusetts:

See Schedule/Exhibit A or Legal Description, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 33 Colorado St, Springfield, MA 01118.

# MORTGAGE
**(Continued)**

Loan No: 1712942                                                              Page 2

**REVOLVING LINE OF CREDIT.** This Mortgage secures the Indebtedness including, without limitation, a revolving line of credit Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance. make advances to Grantor so long as Grantor complies with all the terms of the Credit Agreement.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage. Provided, however, the maximum principal amount intended to be loaned pursuant to the Credit Agreement and secured by this Mortgage is $10,000.00.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate,

**MORGAGE**

MORTGAGE
(Continued)                                   Page 3

manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage.  In addition, Grantor represents and warrants that Grantor's Property does not contain urea formaldehyde foam insulation or urea formaldehyde resin in violation of any Massachusetts state laws.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor.  The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.**  Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property.  Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

## MORTGAGE

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Massachusetts law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $2,500.00. Grantor will

# MORGAGE
## (Continued)

Loan No: 1712942                                            Page 5

upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the maximum amount of Grantor's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $2,500.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the

# MORTGAGE
Loan No: 1712942            (Continued)            Page 6

holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a

# MORGAGE
## (Continued)

part of this Mortgage:

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

## MORTGAGE
(Continued)

Loan No: 1712942                                                           Page 8

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Credit Agreement, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For

**MORTGAGE**
**(Continued)**

Loan No: 1712942                                                           Page 9

such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Grantor will be in default under this Mortgage if any of the following happen: (A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (B) Grantor does not meet the repayment terms of the Credit Agreement. (C) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** This Mortgage is upon the **STATUTORY CONDITION** for any breach of which Lender, the mortgagee, shall have the **STATUTORY POWER OF SALE.** In addition, upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**Foreclosure.** Lender may invoke the **STATUTORY POWER OF SALE,** in which case Lender shall mail a copy of a notice of sale to Grantor and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper

# MORGAGE
## (Continued)

grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Credit Agreement or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fourteen (14) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on

## MORTGAGE
### (Continued)

demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Real Property has been submitted to unit ownership law or similar law for the establishment of condominiums or cooperative ownership of the Real Property:

**Power of Attorney.** Grantor grants an irrevocable power of attorney to Lender to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender will have the right to exercise this power of attorney only after Grantor's default; however, Lender may decline to exercise this power as Lender sees fit.

**Insurance.** The insurance as required above may be carried by the association of unit owners on Grantor's behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose of repairing or reconstructing the Property. If not so used by the association, such proceeds shall be paid to Lender.

**Compliance with Regulations of Association.** Grantor shall perform all of the obligations imposed on Grantor by the declaration submitting the Real Property to unit ownership, by the bylaws of the association of unit owners, or by any rules or regulations thereunder. If Grantor's interest in the Real Property is a leasehold interest and such property has been submitted to unit ownership, Grantor shall perform all of the obligations imposed on Grantor by the lease of the Real Property from its owner.

**ESTATE LOANS.** When Grantor/Onwer is an Estate, any references in the Mortgage/Security Instrument/Deed of Trust to Trust shall mean the Estate identified in the definition of Grantor/Owner and any references to Trustee shall mean the Executor/Administrator/Personal Representative of said Estate.

## MORTGAGE
### (Continued)

Loan No: 1712942                                                                    Page 12

**MORTGAGE BROKER.** No mortgage broker or mortgage loan originator was involved in the mortgage.

**WAIVERS AND MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Massachusetts without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the Commonwealth of Massachusetts.**

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Release of Estate of Homestead.** Grantor hereby releases any estate of homestead as to all Indebtedness secured by this Mortgage.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

## MORTGAGE
### (Continued)

Loan No: 1712942                                                              Page 13

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means Robert P. Demusis Jr and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated October 31, 2008, with credit limit of $10,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is November 5, 2023. **NOTICE TO GRANTOR: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.**

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the Massachusetts Hazardous Waste Management Act, Mass. Gen. Laws Ch. 21C, the Massachusetts Oil and Hazardous Material Release Prevention Act, Mass. Gen. Laws, Ch. 21E, or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means Robert P. Demusis Jr.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by

**MORTGAGE**
**(Continued)**

Loan No: 1712942                                                          Page 14

Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means THE BANK OF WESTERN MASSACHUSETTS, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X _____ (Seal)
   Robert P. Demusis Jr

| Loan No: 1712942 | **MORGAGE**<br>**(Continued)** | Page 15 |
|---|---|---|

## INDIVIDUAL ACKNOWLEDGMENT

**COMMONWEALTH OF MASSACHUSETTS**                )

                                                 ) SS

**COUNTY OF** _Hampden_                          )

On this ___31___ day of ___October___, 20 _08_, before me, the
undersigned notary public, personally appeared **Robert P. Demusis Jr**, proved to me through
satisfactory evidence of identification, which were ___MA DL___,
to be the person whose name is signed on the preceding or attached document, and
acknowledged to me that he or she signed it voluntarily for its stated purpose.

_____
**Notary Public**

My commission expires _3/12/10_

LASER PRO Lending, Ver. 5.39.00.008  Copr. Harland Financial Solutions, Inc. 1997, 2008.
All Rights Reserved.   - MA  J:\LaserPro\consumer\CFI\LPL\G03.FC  TR-38461  PR-INT2006

CERTAIN REAL ESTATE SITUATED IN EAST LONGMEADOW, AND PARTLY IN SPRINGFIELD, HAMPDEN COUNTY, MASSACHUSETTS, BEING KNOWN AND DESIGNATED AS LOT #37 (THIRTY-SEVEN) AS SHOWN ON A PLAN OF LOTS RECORDED IN HAMPDEN COUNTY REGISTRY OF DEEDS IN BOOK OF PLANS 49, PAGE 30, SAID LOT BEING MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

NORTHERLY BY COLORADO STREET, AS SHOWN ON SAID PLAN, ONE HUNDRED FORTY-FIVE (145) FEET; EASTERLY BY LAND NOW OR FORMERLY OF ONE MCCARTHY AS SHOWN ON SAID PLAN, ONE HUNDRED TWENTY-FOUR AND 03/100 (124.03) FEET; SOUTHERLY BY LAND OF OWNER UNKNOWN AS SHOWN ON SAID PLAN, ONE HUNDRED FORTH-FIVE AND 10/100 (145.10) FEET; AND WESTERLY BY LOT #38 (THIRTY-EIGHT) AS SHOWN ON SAID PLAN, ONE HUNDRED THIRTY AND 56/100 (130.56) FEET.

BEING THE SAME PREMISES CONVEYED TO THE HEREIN NAMED GRANTOR(S) BY DEED RECORDED WITH THE HAMPDEN COUNTY REGISTRY OF DEEDS IN BOOK 17134, PAGE 569.